# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs March 26, 2013

## SANDRA BEAVERS v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Bradley County**
**No. 10-357     Amy A. Reedy, Judge**

---

**No. E2012-02335-CCA-R3-PC - Filed April 30, 2013**

---

The Petitioner, Sandra Beavers, pled guilty to sale or delivery of less than .5 gram of methamphetamine, a Schedule II controlled substance. Pursuant to the plea agreement, the trial court sentenced the Petitioner as a Range II offender to ten years, with one year to be served in confinement and the remainder on supervised probation. After her release from jail, the Petitioner violated a condition of her probation that required that she successfully complete the Next Door rehabilitation program, and the trial court revoked her probation. The Petitioner filed a petition for post-conviction relief claiming that she received the ineffective assistance of counsel due to her attorney's failure to communicate with her and failure to request a bond hearing. After a hearing, the post-conviction court dismissed the petition. After a thorough review of the record and applicable authorities, we affirm the post-conviction court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which THOMAS T. WOODALL and NORMA MCGEE OGLE, JJ., joined.

Andrew J. Brown, Cleveland, Tennessee, for the appellant, Sandra Beavers.

Robert E. Cooper, Jr., Attorney General and Reporter; Leslie E. Price, Senior Counsel; Steven Bebb, District Attorney General; and Cynthia LeCroy-Schemel, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION
### I. Facts

#### A. Guilty Plea Submission Hearing

At the guilty plea submission hearing, the State made the following announcement:

On March 2nd, 2009, . . . the Sheriff's Office used a confidential informant in order to purchase an illegal substance from [the Petitioner]. That was accomplished and it was also recorded and it appears that there was actually some, the recording was pretty clear that it was her and the confidential informant did indicate that it was hers. [The Petitioner is] entering a plea of guilty today on this and she will receive a 10 year suspended sentence as a Range II offender. That 10 years will be suspended after serving one year in the county jail. There is a special condition on there your Honor, that is somewhat lengthy and I want to make sure the record is clear on this, that upon her release after serving a year in custody she will enter into the Next Door Program. It's a rehabilitation program and [C]ounsel has advised me there is a bed available for her, but she needs to understand, your Honor, her failure to complete this would be a reason and she would be revoked at that point.

The trial court then confirmed the Petitioner's understanding that the agreement required successful completion of the drug rehabilitation program or her probation would be revoked and she would serve her ten-year sentence. The trial court asked the Petitioner if she wished to plead guilty, and the Petitioner answered in the affirmative. The trial court reviewed the guilty plea forms with the Petitioner, and she agreed that she understood the rights she was waiving in order to enter a plea of guilty. The Petitioner stated that she did not have a mental illness and was not under the effects of any drugs or alcohol. Counsel affirmed that he did not have any concerns regarding the Petitioner's competency based upon his interactions with her.

**B. Post-Conviction Hearing**

The Petitioner filed a petition for post-conviction relief, alleging that she had received the ineffective assistance of counsel. The post-conviction court held a hearing, during which the parties presented the following evidence: The Petitioner testified that she was arraigned on the underlying charges on June 14, 2010. At her next court appointment, September 20, 2010, an attorney ("Counsel") was appointed to represent her. The Petitioner said that, during the course of Counsel's representation, he met with her on only two occasions. She said that she also spoke with him by telephone "several times."

The Petitioner testified that Counsel conveyed to her the State's initial offer of a ten year prison sentence. The Petitioner declined this offer, so Counsel continued her case until February 2011. The Petitioner said that Counsel met with her once during the time between the November 2010 and February 2011 court appointments. During this meeting, Counsel told the Petitioner that the State's offer of ten years remained and that he was trying to negotiate for a sentence involving split confinement.

The Petitioner testified that Counsel reviewed discovery with her and discussed the State's evidence against her. Counsel explained to the Petitioner that the State had an audio and video recording of the drug sale. Before the Petitioner's next court appointment scheduled for June 20, 2011, Counsel spoke with her on the telephone and explained that the State's offer was for her to serve one year of a six-year sentence. At the Petitioner's court date, however, the Petitioner learned that the sentence was for ten years rather than six years.

The Petitioner testified that Counsel did not communicate "well for [her]." She explained that "I felt like [Counsel] was just ready for me to serve ten and he just wasn't, he was more on their side than mine." The Petitioner recalled asking Counsel to file a motion requesting the trial court set a bond in her case. Counsel told her that the trial court would not set a bond in her case and did not file a motion as she requested.

The Petitioner testified that she wrote three letters to the Public Defender, Counsel's employer, stating that she needed another attorney and that Counsel was "doing nothing for [her]." She also addressed Counsel directly about her concerns during telephone conversations. The Public Defender told the Petitioner that Counsel was "a very bright lawyer," and she had to work with Counsel.

The Petitioner stated that Counsel never reviewed the requirement that she complete a treatment program at The Next Door before the entry of her guilty plea. The Petitioner testified that she arranged for her admission into The Next Door. Once she received acceptance to the program, she forwarded the letter to Counsel for use in negotiations with the State.

On cross examination, the Petitioner testified that she had eight or nine prior felony convictions. She stated that she did not know whether those convictions were public record, but she agreed that the convictions were disposed of in the same court. The Petitioner agreed that she was originally out on bond, but the bond was subsequently revoked for failure to appear for a court date in Anderson County. The Petitioner identified her signature on a Plea of Guilty form dated June 20, 2011. She agreed that Counsel reviewed with her the Plea of Guilty form that included a Waiver of Trial by Jury and a Waiver of Appeal. The Petitioner stated that she had the ability to read and write and was able to read the forms she signed.

The Petitioner confirmed that Counsel reviewed the discovery in her case with her. She said that she was unable to view the video recording at the jail but that Counsel had viewed the video recording and relayed its content. The Petitioner agreed that she had court appearances on June 14, 2010, September 20, 2010, November 23, 2010, February 22, 2011, and June 20, 2011, which spanned the course of almost a year. The Petitioner agreed that, given the length of time from her arraignment to her guilty plea, she was not forced or rushed into pleading guilty. The Petitioner agreed that at the guilty plea hearing the State announced the plea agreement, which included the requirement that she successfully complete a treatment program at The Next Door.

The Petitioner identified the judgment form in this case and agreed that the condition of her completion of the Next Door rehabilitation program was included on the form. The Petitioner said that she had wanted to attend the program and that she did not complete the program because she tested positive for cocaine "about a week" into the program. She acknowledged that it was her failure to complete the program that resulted in the revocation of her probation and the reinstatement of her ten-year sentence.

The Petitioner testified that she never told Counsel she wanted a trial. She stated, "I'm not saying that I wasn't guilty of it." The Petitioner went on to explain that her issue was that she was unaware that her completion of treatment at The Next Door was a requirement of her probation. She said that she would never have agreed to that condition because she was an addict and unsure of whether she could successfully finish the program or not. She confirmed that she willingly sought out the program and heard her sentence, which included completion of a treatment program at The Next Door, announced in court on the day she entered her guilty plea.

Counsel testified that, in September 2010, he was appointed to the Petitioner's case. He said the Petitioner was charged with sale and delivery of Schedule II methamphetamine. The case involved a police monitored "buy." He reviewed the discovery with the Petitioner, and the Petitioner offered information regarding the confidential informant. Counsel then discussed the State's offer of a ten-year prison sentence with the Petitioner. He recalled that the Petitioner's case was set for "plea or assignment" in November. Counsel spoke with the prosecutor before this date, and the offer was reduced from a ten-year to a six-year prison sentence. Counsel explained that the State's basis for this offer was that the Petitioner was a Range II offender, had been on probation before, had been on community corrections before, had served prison time before, and violated both probation and community correction sentences. The Petitioner declined the six-year offer because she did not want to serve a full sentence.

Counsel testified that he had the case reset until February to allow for time to look into

a drug rehabilitation program and submit an application for the Davidson County Drug Court. The Petitioner was accepted into a two-year inpatient program through the Davidson County Drug Court program but was placed on a "long wait list." Counsel said that the Petitioner wanted to attend a rehabilitation program but was hesitant about the drug court due to the length of time of the program. He described the Petitioner as "eager to get out."

Counsel testified that he discussed the possibility of the Petitioner's admission into the Davidson County Drug Court with the prosecutor. While the prosecutor was considering this option, the Petitioner told Counsel about the Next Door program. After inquiry into the program, Counsel presented the prosecutor, in March 2011, with the Next Door program, a six-month inpatient program, as an option. Specifically, he suggested that in exchange for the Petitioner's plea of guilt to sale and delivery of methamphetamine, a Class C felony, she serve one year in jail, with credit for the time she had already served, and then the sentence would be suspended for six years. Upon her release she would be required to attend and successfully complete the Next Door program. During one of their weekly phone calls, Counsel discussed this counter-offer with the Petitioner and she seemed "very happy." About a month later, the prosecutor told Counsel he would accept the counter-offer with the exception of a ten-year sentence rather than the proposed six years.

Counsel testified that, based upon his conversations with the Petitioner, he believed she understood that she was required to complete the Next Door program. Counsel said that he spoke with the Petitioner regarding this requirement prior to her guilty plea and that the requirement was also announced in court at her guilty plea hearing.

Counsel testified that he met with the Petitioner on two occasions, and he spoke with her frequently on the telephone. Counsel said that he was aware that the Petitioner had complained to his superior about his representation. The Public Defender shared the Petitioner's letter with Counsel and he, the Public Defender, and the Petitioner participated in a phone call discussing her concerns. Counsel said that the continuances in the case caused the Petitioner to feel "anxious" but were necessary due to the fact she was on a wait list for the Davidson County Drug Court and there was not a "confirmed offer on the case."

Counsel testified that he reviewed the discovery in the case which included a video and audio recording of the drug sale and still photographs. He reviewed the discovery with the Petitioner, but she was unable to review the video recording. Counsel said that because he had reviewed the recording, he relayed the content of the recording to her. Counsel testified that, at times, the Petitioner was "very rude" to him and hung up during their telephone conversations. After he confirmed the plea agreement that allowed for her release and probated sentence, the Petitioner became "very apologetic" for her behavior and "seemed very happy with the offer." Counsel said that the Petitioner never sought a trial on the matter

-5-

and described her "biggest concern" as release from jail.

On cross-examination, Counsel testified that he did not file a bond motion in this case. He recalled that the Petitioner told him that she had never participated in treatment, and she now wanted the opportunity. Based upon her desire to seek treatment, they decided to pursue a rehabilitation program as part of her sentence. He explained that, because they were seeking a rehabilitation program, the agreement required that she be transferred directly from custody to a rehabilitation program. Counsel again stated that the Petitioner never expressed a desire to go to trial but only sought a "better offer."

After hearing the evidence, the trial court denied the Petitioner's petition for post-conviction relief, finding that the Petitioner had failed to establish that Counsel was ineffective in his representation. It is from this judgment that the Petitioner now appeals.

## II. Analysis

The Petitioner asserts that the post-conviction court erred when it denied her relief based upon the ineffective assistance of counsel. She argues that Counsel's failure to properly communicate with her about the details of the plea agreement and to file a bond motion constituted the ineffective assistance of counsel. The State responds that the record supports the post-conviction court's determination that Counsel's representation was not ineffective. We agree with the State.

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. T.C.A. § 40-30-103 (2006). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2006). Upon review, this Court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999) (citing *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997). A post-conviction court's factual findings are subject to a *de novo* review by this Court; however, we must accord these factual findings a presumption of correctness, which can be overcome only when a preponderance of the evidence is contrary to the post-conviction court's factual findings. *Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's conclusions of law are subject to a purely *de novo* review by this Court, with no presumption of correctness. *Id.* at 457.

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee

Constitution. *State v. White*, 114 S.W.3d 469, 475 (Tenn. 2003); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). The following two-prong test directs a court's evaluation of a claim for ineffectiveness:

> First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. Unless a [petitioner] makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also State v. Melson*, 772 S.W.2d 417, 419 (Tenn. 1989).

In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. *Baxter*, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, "a petitioner must show that counsel's representation fell below an objective standard of reasonableness." *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (citing *Goad*, 938 S.W.2d at 369).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. *Strickland*, 466 U.S. at 690; *State v. Mitchell*, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The court should avoid the "distorting effects of hindsight" and "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 689-90. In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462. Finally, we note that a defendant in a criminal case is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984)). Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App.

1980). The fact that a particular strategy or tactic failed or hurt the defense, does not, standing alone, establish unreasonable representation. However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation. *House*, 44 S.W.3d at 515 (quoting *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996)).

If the petitioner shows that counsel's representation fell below a reasonable standard, then the petitioner must satisfy the prejudice prong of the *Strickland* test by demonstrating "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694; *Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). This reasonable probability must be "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Harris v. State*, 875 S.W.2d 662, 665 (Tenn. 1994). In the context of a guilty plea, as in this case, the effective assistance of counsel is relevant only to the extent that it affects the voluntariness of the plea. Therefore, to satisfy the second prong of *Strickland*, the petitioner must show that there "is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985) (footnote omitted); *see also Walton v. State*, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997).

After hearing the evidence, the trial court concluded that the Petitioner had failed to show by clear and convincing evidence that Counsel was ineffective. As to witness credibility, the post-conviction court stated as follows:

> [The Petitioner] is at best an evasive witness as testifying here today, and so the Court makes a finding that she is an evasive and not a credible witness here today. The Court finds that [Counsel] is a credible witness.

The post-conviction court then found that the guilty plea was a "knowing, intelligent and voluntary plea." The post-conviction court noted that it was apparent that the Petitioner conferred with Counsel at court appearances, during telephone calls, and "visits" providing "a lot of opportunity" for discussion about alternatives. The post-conviction court also noted the Petitioner's history and experience with criminal offenses and the court system. The post-conviction court found that the record evidenced the Petitioner's "understanding, competence and relative intelligence." The post-conviction court further found that Counsel was "thorough and patient" and provided "above average" representation in this case. Based upon these findings the post-conviction court concluded that the Petitioner had failed to prove by clear and convincing evidence that Counsel's performance was deficient, so it denied the Petitioner relief.

The evidence in the record does not preponderate against the trial court's findings.

The Petitioner testified that she only sought a plea agreement with the State as a resolution to her cases and that her main concern was a split confinement sentence that provided for her release from jail. The State's initial offer was ten years to be served in confinement. After Counsel negotiated with the State, the offer was reduced to ten years with one year to be served in confinement and the remainder to be served on supervised probation. The Petitioner signed a plea agreement, which included the details of the plea agreement and the requirements of the Petitioner under the agreement. The State read the plea agreement aloud in court at the guilty plea hearing and the trial court confirmed the Petitioner's understanding of the requirements.

The Petitioner appears to take issue with the requirement that she successfully complete the Next Door program, asserting that Counsel never made this requirement clear to her. This assertion is inconsistent with her testimony that she sought out the Next Door program and provided Counsel with the information about the program in order to negotiate with the State. Furthermore, this specific requirement was not only in the plea agreement documents but also discussed in court at the guilty plea submission hearing. Upon specific questioning as to the requirement of successful completion of the Next Door program, the Petitioner agreed and stated she wanted to proceed with the agreement. The Petitioner has not met her burden of showing that Counsel was deficient in this respect.

The Petitioner also argues that Counsel was ineffective for failure to pursue a bond hearing. The record does not support this assertion. The Petitioner was originally on bond for this case, which was revoked for her failure to appear in court in another county. The Petitioner admitted at the post-conviction hearing that she was an addict. According to Counsel, the Petitioner had not previously attempted treatment and now wanted the opportunity for rehabilitation. At her request, Counsel gained admittance for the Petitioner to a two-year inpatient program in Davidson County through the court system. Due to the length of the wait to enter the program and the program itself, the Petitioner researched and applied to the Next Door, a six-month inpatient program, and was accepted. The agreement required that the Petitioner be transferred from the jail to the inpatient facility. Therefore, Counsel did not request a bond hearing in furtherance of the Petitioner's request that he negotiate an opportunity for her to seek treatment as part of her sentence. The Petitioner has failed to show Counsel was ineffective in this regard.

Accordingly, we conclude that the trial court did not err when it denied the Petitioner's petition for post-conviction relief. The evidence does not preponderate against the findings of the trial court, therefore, the Petitioner is not entitled to relief.

**III. Conclusion**

After a thorough review of the record and relevant authorities, we conclude that the post-conviction court properly denied post-conviction relief. Accordingly, we affirm the judgment of the post-conviction court.

_____
ROBERT W. WEDEMEYER, JUDGE